IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* MICHAEL FOWLER, PEPPI FOWLER, VICTOR CORTES, and DANNY NEVAREZ, as relators under the False Claims Act,<br><br>Plaintiffs,<br><br>v.<br><br>CAREMARK RX, INC., a Delaware corporation, and CAREMARK INC., a Delaware corporation,<br><br>Defendants. | Civil Action No.: 03 C 8714<br><br>Suzanne B. Conlon, Judge |

## MEMORANDUM OPINION AND ORDER

Michael Fowler, Peppi Fowler, Victor Cortes, and Danny Nevarez, on behalf of the United States, sue their former employer, Caremark Inc. ("Caremark"), and its parent, Caremark Rx, Inc., for alleged fraudulent practices in distributing prescription drugs to members of various federal health insurance plans. Plaintiffs claim defendants made misrepresentations to the government in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.* (Count I). In addition, they bring supplemental state claims under the false claims acts of Tennessee, Texas, the District of Columbia, Louisiana, and Michigan (Counts II through VI). Defendants move to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). They also move to strike portions of plaintiffs' response to the motion to dismiss. For the reasons set forth below, the motions are granted.

## BACKGROUND

The following facts are derived from the amended complaint. Defendants are pharmaceutical services companies with annual revenues of approximately $8 billion. Am. Compl. at ¶ 4. They contracted with various federal entities to supply prescription drugs to members of federal health insurance plans. *Id.* at ¶ 9. To carry out these contracts, Caremark maintained facilities at four locations: Fort Lauderdale, Florida; Mount Prospect, Illinois; Phoenix, Arizona; and San Antonio, Texas. *Id.* at ¶¶ 2, 3, 11, 68. At all relevant times, Caremark employed Michael and Peppi Fowler at its Florida facility, and Cortes and Nevarez at its Texas facility. *Id.* at ¶¶ 1-3.

Under its government contracts, Caremark was subject to penalties for failing to meet performance targets. *Id.* at ¶ 13. For example, Caremark was required to ship prescription drugs to plan members within a specified number of days after receiving their orders. *Id.* at ¶ 12. To evade penalties, Caremark allegedly implemented policies and procedures designed to conceal its failure to meet processing deadlines. *Id.* at ¶¶ 14-28. Plaintiffs claim to have first-hand knowledge of Caremark's policies and procedures. *Id.* at ¶¶ 2, 3.

According to the amended complaint, Caremark's Florida facility processed federal plan members' orders for prescription drugs. *Id.* at ¶ 18. Each day, thousands of orders were entered into Caremark's computer system and shipped to plan members. *Id.* at ¶¶ 6, 18-19. For orders received on Saturday or Sunday, Caremark employees allegedly entered the following Monday as the receipt day. *Id.* at 21. When inundated with orders, the Florida facility would divert unfilled orders to its Arizona, Illinois, or Texas facility. *Id.* at ¶ 22. To conceal the delay resulting from inter-facility delivery, employees in the other three facilities would treat the diverted orders as if they were new orders received directly from plan members. *Id.* at ¶ 23.

2

In addition to shipping orders, the Florida facility also processed returned prescription drugs. *Id.* at ¶ 30. According to the amended complaint, Caremark routinely resold returned drugs without ascertaining whether they were damaged. *Id.* at ¶¶ 29-54. When returned drugs were resold, Caremark allegedly billed the government for both original and resold orders. *Id.* at ¶ 47. To conceal its double-billing scheme, Caremark allegedly falsified records by stating that returned drugs were destroyed. *Id.* at ¶¶ 36-37.

Caremark allegedly implemented additional schemes to defraud the government: (1) falsifying prescription dates; (2) fraudulently altering existing prescriptions; (3) delaying and cancelling orders without notice to plan members; (4) manipulating internal records; and (5) refusing to make generic drugs available to plan members. *Id.* at ¶¶ 76-189. According to the amended complaint, Caremark took the following steps to complete each scheme:

> Caremark made "claims" to the federal government, federal insurance plans, and plan members as defined by 31 U.S.C. [§] 3729(c).
> . . .
> Caremark . . . falsely represented to the federal government, the Federal Plans, and Federal Plan Members, through regular billing invoices and statements, reports, and otherwise, that it was entitled to compensation pursuant to the terms of [t]he [a]greements.

*Id.* at ¶¶ 193-94; *see also id.* at ¶¶ 195-211.

Plaintiffs filed this case in December 2003. In accordance with FCA's *qui tam* provision, 31 U.S.C. § 3730, the case remained under seal until February 16, 2006 to allow time for the United States Attorney to decide whether to intervene. *See* Minute Order, Dkt. No. 29 at 1 (Feb. 16, 2006). After the government declined to intervene, plaintiffs proceeded as relators.

## DISCUSSION

### I. Legal Standard

A motion to dismiss challenges the sufficiency of the complaint, and dismissal is warranted only if "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Cler v. Ill. Educ. Ass'n*, 423 F.3d 726, 729 (7th Cir. 2005) (quoting *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000)). On a motion to dismiss, all well-pleaded allegations are accepted as true and all reasonable inferences are drawn in favor of the nonmoving party. *Cler*, 423 F.3d at 729. Generally, to survive a motion to dismiss, a complaint need only provide a short and plain statement giving defendants fair notice of the nature and basis of the claim. Fed. R. Civ. P. 8(a); *DeWalt*, 224 F.3d at 612. But a fraud claim must allege facts with particularity. Fed. R. Civ. P. 9(b). Under this rule, a fraud claim must identify: (1) the person(s) who made the alleged misrepresentation; (2) the time, place, and content of the misrepresentation; and (3) the method by which the misrepresentation was communicated to plaintiffs. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997). In other words, this rule requires the "who, what, when, where, and how" of the circumstances of the alleged fraud. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

### II. Sufficiency of Pleadings

#### A. Rule 9(b) Requirements

Rule 9(b) applies to FCA claims. *United States ex rel. Gross v. Aids Research Alliance-Chicago*, 415 F.3d 601, 604 (7th Cir. 2005). To state a claim, a FCA plaintiff must allege three elements with sufficient particularity: (1) defendant made a statement in order to receive money from the government; (2) the statement was false; and (3) defendant knew it was false. *Id.* In *Gross*, plaintiff alleged defendant submitted certain forms to present false claims to the government. *Id.* at

4

603. But he did not identify the purpose or content of these forms. *Id.* at 605. Nor did he describe how any of the forms caused the government to pay defendants. *Id.* Because he failed to allege defendants' misrepresentations with particularity, his case was dismissed. *Id.* at 604-05.

*Gross* squarely applies to this case. Plaintiffs allege defendants made misrepresentations to the government "through regular billing invoices and statements, reports, and otherwise." Am. Compl. at ¶ 194. They fail to set forth facts identifying the "who, what, when, where, and how" requirements for pleading fraud. *Gross*, 415 F.3d at 605; *see also United States ex. rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002) (plaintiff must identify "*an actual false claim* for payment being made to the government") (emphasis original). Thus, their amended complaint cannot pass muster under Rule 9(b).

Plaintiffs attempt to distinguish *Gross* and *Clausen*. But their efforts are futile. They argue *Gross* turned on the fact that the fraud allegations were loaded with details and undecipherable. Pls. Mem. at 13. Contrary to their argument, *Gross* was dismissed for one reason alone: "[Gross'] conclusory allegations shed no light on the nature or content of the [alleged false statements, or on] why any particular false statement would have caused the government to [pay defendants]." *Gross*, 415 F.3d at 605. Because *Gross* is binding, any attempt to evade its application must be rejected. Plaintiffs argue *Clausen* represents an "extreme minority line of cases." Pls. Mem. at 14. While the Seventh Circuit has not opined on *Clausen*, this court has followed *Clausen* in FCA cases. *See, e.g., Bannon v. Edgewater Med. Ctr.*, 406 F. Supp. 2d 907, 926 (N.D. Ill. 2005) (Cole, M.J.); *United States ex rel. Bantsolas v. Superior Air & Ground Ambulance Transp., Inc.*, No. 01 C 6168, 2004 WL 609793, at *3 (N.D. Ill. Mar. 22, 2004) (Coar, J.); *Gross v. Ashcroft*, No. 01 C 8182, 2003 WL 22508153, at *2 (N.D. Ill. Nov. 3, 2003) (Hibbler, J.); *Peterson v. Cmty. Gen. Hosp.*, No. 01 C 50356, 2003 WL 262515, at *1 (N.D. Ill. Feb. 7, 2003) (Reinhard, J.). *Clausen* is persuasive;

plaintiffs' interpretation of *Clausen* is not. Because plaintiffs fail to offer any reason for the court to deviate from *Gross* or *Clausen*, their FCA claim must be dismissed.

Plaintiffs argue Rule 9(b) is satisfied because they allege "a brief sketch" of the alleged fraudulent schemes. Pls. Mem. at 4. Their argument lacks any basis in fact or law. Central to their FCA claim are defendants' alleged misrepresentations to the government. *Gross*, 415 F.3d at 604 ("[FCA] liability attaches only when a false statement is used 'to get a false . . . claim . . . paid . . . by the government'"). Because they fail to set forth any facts about the alleged misrepresentations, their "sketch" of the alleged fraudulent schemes is incomplete. To support their argument, they rely on *United States ex rel. Hunt v. Merk-Medco Managed Care, L.L.C.*, 336 F. Supp. 2d 430 (E.D. Pa. 2004) (Newcomer, J.), *United States ex rel. Tyson v. Amerigroup Illinois, Inc.*, No. 02 C 6074, 2004 WL 2066888 (N.D. Ill. Sept. 13, 2004) (Coar, J.), *Carter v. Signode Industries, Inc.*, 694 F. Supp. 493 (N.D. Ill. 1988) (Aspen, J.). But *Hunt*, *Tyson*, and *Carter* are distinguishable because in each case, the allegations of misrepresentations cleared the Rule 9(b) hurdle. *Hunt*, 336 F. Supp. 2d at 437 (the complaint sufficiently alleges "what contracts were involved and what claims were false"); *Tyson*, 2004 WL 2066888, at *2 (detailing the allegations of misrepresentations); *Carter*, 694 F. Supp. at 497-99 (same). Because plaintiffs' reliance on these cases is misplaced, their argument must be rejected.

### B. Rule 9(b) Exceptions

Plaintiffs argue Rule 9(b) should be relaxed because defendants had exclusive control over information about the alleged schemes. It is true that Rule 9(b) may be relaxed where plaintiffs lack access to all facts necessary to detail their fraud allegations. *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998); *see also In re VMS Sec. Litig.*, 752 F. Supp. 1373, 1391-92 (N.D. Ill. 1990) (Conlon, J.) (applying the exception to Rule 9(b)). But this exception does not apply here.

Plaintiffs allege defendants submitted false claims to the government. Am. Compl. at ¶ 194. Their allegation precludes a finding that defendants had exclusive control of information about the alleged false claims. In addition, their assertion of ignorance about the alleged false claims contradicts their allegation of first-hand knowledge about the alleged fraud. *Id.* at ¶¶ 2-3. This court has repeatedly refused to relax Rule 9(b) in FCA cases involving similar facts. *See, e.g., United States ex rel. Raymer v. Univ. of Chicago Hosps.*, No. 03 C 0806, 2006 WL 516577, at *6 (N.D. Ill. Feb. 28, 2006) (Deryeghiayan, J.) ("[r]elators, allegedly nurses who worked for [defendant], should be capable, at a minimum, of identifying the titles or positions of those responsible [for the alleged fraudulent practices]"); *Bantsolas*, 2004 WL 609793, at *4 (defendants did not control access to all pertinent information); *Peterson*, 2003 WL 262515, at *2 (same); *United States ex rel. Garst v. Lockheed Integrated Solutions Co.*, 158 F. Supp. 2d 816, 822 (N.D. Ill. 2001) (Grady, J.) (same).

Plaintiffs argue Rule 9(b) should be relaxed in cases involving systemic, complex corporate fraud. Not only do they fail to explain why a purported corporate fraud exception applies, they also fail to cite a single case from this circuit to support their argument. Instead, they rely on seven distinguishable cases from other districts. *United States ex rel. Tiesinga v. Dianon Systems, Inc.* is distinguishable because in that case, the government conceded its complaint was insufficient under Rule 9(b). 231 F.R.D. 122, 124 (D. Conn. 2005) (Kravitz, J.). In *United State ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, Rule 9(b) was relaxed because defendants had exclusive knowledge of the alleged fraud. 20 F. Supp. 2d 1017, 1039 (S.D. Tex. 1998) (Harmon, J.). But as discussed above, defendants here do not control access to all pertinent information. *Thompson* is therefore inapplicable. Equally inapposite are the other five cases cited by plaintiffs because the allegations in each case were sufficiently detailed to satisfy Rule 9(b). *United States ex rel. Johnson v. Shell Oil Co.*, 183 F.R.D. 204, 207-08 (E.D. Tex. 1998) (Hannah, J.); *United States ex rel. Pogue*

*v. Am. Healthcorp, Inc.*, 977 F. Supp. 1329, 1333 (M.D. Tenn. 1997) (Echols, J.); *United States ex rel. Mayman v. Martin Marietta Corp.*, 894 F. Supp. 218, 223 (D. Md. 1995) (Garbis, J.); *United States ex rel. Piacentile v. Wolk*, No. 93-5773, 1995 WL 20833, at *5 (E.D. Pa. Jan. 17, 1995) (Newcomer, J.); *United States v. Kensington Hosp.*, 760 F. Supp. 1120, 1125 (E.D. Pa. 1991) (VanArtsdalen, J.). Plaintiffs' argument lacks legal basis and must therefore be rejected.

## III. State Law Claims

Like their FCA claims, plaintiffs' state law claims must be dismissed for failure to plead fraud with particularity under Rule 9(b). In addition, their state law claims are defective because they fail to comply with the *qui tam* provisions of the state false claims acts. Similar to the FCA, the false claims acts of Tennessee, Texas, the District of Columbia, Louisiana, and Michigan permit *qui tam* actions only if: (1) they are brought in the name of the state government; (2) the complaints are filed under seal and provided to the state government; and (3) the complaints may not be served until the state government decides whether to intervene. TENN. CODE ANN. § 71-5-183(b) (2005); TEXAS HUM. RES. CODE ANN. § 36.101-102 (2006); D.C. CODE § 2-308.15(b) (2006); LA. REV. STAT. ANN. § 46:439.2(A) (2006); MICH. COMP. LAWS ANN. § 400.610a (2006); *see also* 31 U.S.C. § 3730(b). Plaintiffs' failure to comply with these pre-conditions requires dismissal of their state law claims. *See United States ex rel. Lu v. Ou*, 368 F.3d 773, 774 (7th Cir. 2004) (dismissal may be based on relator's failure to provide the government with the complaint); *see also Kahn v. Chicago Hous. Auth.*, No. 01 C 0976, 2002 WL 849801, at *2 (N.D. Ill. May 2, 2002) (Kocoras, J.) (granting judgment to defendant because relator failed to comply with 31 U.S.C. § 3730(b)).

Plaintiffs argue that because the pre-conditions for *qui tam* actions are designed for the state governments' benefit, defendants lack standing to assert a defense based on the pre-conditions. They rely on three distinguishable cases from other districts: *United States ex rel. Maxfield v. Wasatch*

*Constructors*, No. 2:99-CV-00040, 2005 U.S. Dist. LEXIS 10162 (D. Utah, May 27, 2005) (Cassell, J.), *United States ex rel. Mikes v. Straus*, 931 F. Supp. 248 (S.D.N.Y. 1996) (Conner, J.), and *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Georgia, Inc.*, 755 F. Supp. 1040 (S.D. Ga. 1990) (Edenfield, J.). In each case, the government was served with the complaint and given an opportunity to decide whether to intervene. *Maxfield*, 2005 U.S. Dist. LEXIS 10162, at * 6; *Mikes*, 931 F. Supp. at 259; *Stinson*, 755 F. Supp. at 1054. In other words, the relators in these cases substantially complied with the pre-conditions of 31 U.S.C. § 3730(b). *See, e.g., id.* ("[the court] sees no reason to demand letter-perfect compliance"). In contrast, plaintiffs here have failed to comply with every pre-condition required by state false claims acts. Thus, their reliance on *Maxfield*, *Mikes*, and *Stinson* is misplaced. Moreover, they fail to explain why the sound reasoning in *Khan* is inapplicable. To allow their state law claims to proceed would render the state false claims acts toothless. Accordingly, the state law claims must be dismissed.

## IV. Plaintiffs' Response

### A. Motion to Strike

Plaintiffs' response relies on matters outside the amended complaint, including defendants' correspondence with, and disclosures to, the government. Pls. Mem. at 6-10. It is axiomatic that on a motion to dismiss, the court may consider only the pleadings and documents attached to the complaint. *See* Fed. R. Civ. P. 12(b)(6) (if the court considers matters outside the pleadings, the motion to dismiss is converted into a motion for summary judgment); *Kennedy v. Venrock Assocs.*, 348 F.3d 584, 592-93 (7th Cir. 2003) (plaintiffs may not defend against dismissal by alleging in their brief facts outside their complaint). Thus, portions of Section II(B) of plaintiffs' response, from page 6 through page 10 (except lines 9 through 18 of page 8), must be stricken.

9

## B. Local Rules and the Standing Order

The defects of plaintiffs' response go beyond irrelevant materials. Both the Local Rules and the court's standing order limit briefs to 15 pages; a brief exceeding the page limit may be filed only upon leave of court. LR 7.1; Case Management Procedures (Revised Nov. 27, 2005), *available at* http://www.ilnd.uscourts.gov/JUDGE/CONLON/sbcpage.htm. In an apparent attempt to evade the page limit, however, plaintiffs included nearly a full page footnote in their response. Pls. Mem. at 10. Plaintiffs' conduct may lead to sanctions. *See Westinghouse Elec. Corp. v. NLRB*, 809 F.2d 419, 425 (7th Cir. 1987) (imposing a $1,000 fine upon counsel for violating rules on page limit). Plaintiffs shall strictly comply with the Local Rules and the standing order. *See Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) ("[s]ubstantial compliance is not strict compliance"). No further violations will be tolerated. *See, e.g., Forney v. TTX Co.*, No. 05 C 6257, Minute Order, Dkt. No. 128 at 2 (May 1, 2006) (Conlon, J.) (striking a brief for failure to comply with Local Rule 5.2(b)).

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss the amended complaint is granted. The amended complaint is dismissed without prejudice. Defendants' motion to strike portions of plaintiffs' response is granted.

ENTER:

Suzanne B. Conlon
United States District Judge

May 30, 2006